AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of the Northern Mariana Islands

FILED
Clerk
District Court

SEP 1 4 2023

for the Northern Mariana Islands
By _____
(Deputy Clerk)

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. CR 23-00011 |
| DONGLIN XU, | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __September 13, 2023__ in the county of ___---___ in the
___---___ District of the Northern Mariana Islands, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(I) | Count One: Engaging in a conspiracy to transporting, moving, or attempting to transport or move, an alien within the United States, knowing or in reckless disregard of the fact that the alien came to, entered, and remained in the United States in violation of law |

This criminal complaint is based on these facts:
See attached Affidavit of Special Agent MeiLani L. Quintanilla in Support of Criminal Complaint.

☑ Continued on the attached sheet.

_____
Complainant's signature

MeiLani L. Quintanilla, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 9/14/2023

_____
Judge's signature

City and state: Saipan, CNMI

Ramona V. Manglona, Chief Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| UNITED STATES OF AMERICA, | Criminal Case No. **CR 23-00011** |
|---|---|
| Plaintiff, | |
| vs. | **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT** |
| DONGLIN XU, | |
| Defendant. | |

I, MeiLani L. Quintanilla, being duly sworn, depose and states:

**A.     Background of Affiant**

1.     I am a Special Agent of the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have so been assigned since March 2022. I am currently assigned to the HSI Saipan office. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

2.     During my tenure as a Special Agent, I have completed approximately 720 hours of Criminal Investigator Training Program (CITP) and Homeland Security Investigations Special Agent Training Program (HSISAT) instruction at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. While at FLETC, I received classroom and practical training in the areas of general law enforcement, criminal investigative techniques, interviews, general and electronic surveillance, and criminal law including search and seizure.

3.     Prior to my tenure as a Special Agent, I served as a Customs Officer with the Guam Customs and Quarantine Agency (CQA), which included approximately 1440 hours of law enforcement education and training on the identification of contraband, the illegal smuggling

of contraband, and search and seizure applications.

4. I currently serve in the United States Air National Guard since June 2016, where I have received security and policing instruction, training, and practical application during numerous mobilizations with the Armed Services.

5. My duties as a Special Agent with HSI include investigating both criminal and administrative violations of federal laws of Titles 8, 18, 19, 21, 31 and others—specifically including, but not limited to, violations of Title 8 United States Code (USC) § 1324.

6. As a Special Agent with HSI, I have participated in investigations of criminal violations of human smuggling. I have also participated in undercover investigations involving the arrangement and facilitation of human smuggling operations and have conducted surveillance and intelligence gathering operations in human smuggling investigations.

7. I am familiar with the operation of human smuggling organizations in the United States, specifically between the Northern Mariana Islands (NMI) and Guam. I know from my training, knowledge, and experience that human smuggling organizations often facilitate the illegal transport of noncitizens from the NMI to Guam for profit using small maritime vessels. Such vessels are typically single-engine recreational boats, not intended for extended passenger voyages.

8. I know from my training, knowledge, and experience that noncitizens will pay smugglers to be transported between borders. I know from my experience that noncitizens have paid between $3,000 to $5,000 USD cash to be smuggled from the NMI to Guam. I know from my experience that noncitizens seek to enter Guam for higher wages compared to the NMI. I know from my experience that noncitizens often enter the NMI with the intention to overstay their legal immigration status. I know from my experience that noncitizens often have bulk cash

1 currency in their possession during smuggling operations.

2     9.    I base the information in this Affidavit on my personal knowledge and on information that I have learned, either directly or indirectly, from witnesses, records, and other law enforcement officers and agents. Additionally, unless otherwise indicated, conversations discussed herein are described in substance and part rather than verbatim. Likewise, I have not included each and every fact that my investigation has revealed, but rather, have included only those facts necessary to show probable cause.

**B.   Purpose of Affidavit**

    10.   I make this Affidavit in support of an Application for a Criminal Complaint for Donglin XU ("XU"), also known as "TONY", because probable cause exists to believe that XU violated Title 8 USC §§ 1324 (a)(1)(A)(ii) and (v)(I) by engaging in a conspiracy to transporting, moving, or attempting to transport or move, an alien within the United States, knowing or in reckless disregard of the fact that the alien came to, entered, and remained in the United States in violation of law.

**C.   Facts Establishing Probable Cause**

    11.   On or about June 20, 2023, a source of information (SOI) informed HSI Saipan investigators that a male Chinese national known to the SOI only as "TONY" approached the SOI asking about a boat captain in Saipan willing to be paid any amount of money to take approximately nine (9) people to the island of Guam over the July 4th holiday weekend. The SOI provided TONY's phone number, [redacted] and vehicle license plate (LP), [redacted], to HSI investigators. Subpoenaed records from the NMI Bureau of Motor Vehicles (BMV) subsequently identified the registered owner of NMI LP# [redacted] as XU. Subpoenaed telephone record information identified the subscriber for phone number, [redacted], as XU. Independent DHS

3

database record checks indicated that XU entered the NMI on or about June 11, 2012, under the CNMI-only Parole Program with an expected departure from the NMI on June 23, 2012. The SOI subsequently positively identified XU in a photograph lineup as the individual known to the SOI as TONY.

12. On or about June 30, 2023, HSI Saipan consensually monitored and electronically recorded an in-person meeting between the SOI and XU in Saipan, NMI. The SOI advised XU that XU's phone number will be given to a friend of the SOI that can assist XU.

13. Beginning on or about July 3, 2023, an HSI Undercover Agent (UCA), working in an undercover capacity as a Guam-resident boat captain, initiated consensually monitored and recorded telephonic communications with XU. Subpoenaed records of XU's known phone number further contained call detail records from the HSI UCA beginning on or about July 3, 2023.

14. On or about July 4, 2023, at approximately 1952 hours, the HSI UCA received a WhatsApp text message from XU's known phone number, by an individual who identified themself as "TONY". Below is a verbatim excerpt of XU's WhatsApp message to the HSI UCA:

> *[7/4/23, 8:52:50 PM]: good evening, friend! I need to tell you all my thoughts in text first. Only after I let you understand my thoughts and needs can the conversation we agreed at 12 o'clock tomorrow be carried out smoothly. And I have already told you all my needs and questions, if you have any other comments or suggestions on my plan after you read it, please let me know tomorrow, thank you!*
>
> *[7/4/23, 8:53:08 PM] TONY: My two friends who work in construction and I want to go to Guam to find a job. I need your help to transport me and two friends to*

4

Guam.

[7/4/23, 8:54:15 PM] TONY: If you can meet the above requirements, I am willing to pay 3,000 US dollars for the boat ticket each, and additionally pick up our friends in Rota or Saipan, and each of us will pay him 500 US dollars for the fare.

[7/4/23, 8:55:00 PM] TONY: If you would like to help us. We need to go to Rota to wait for you, but we have no friends in Rota, and we are not familiar with the environment of Rota. We need you to find a friend who will pick us up at Rota Airport and wait for you to pick us up at the place you designated. until boarding your ship. You can also find a reliable friend in Saipan to go to Rota with us to wait for you.

[7/4/23, 8:55:24 PM] TONY: Also: If possible, we need you to choose a remote and uninhabited coast in Guam for us to go ashore. Don't let DHS see us. This saves you and your friends trouble. And we don't want the media to report on our affairs, so as to avoid becoming a well-known news event. Because after we successfully arrive in Guam, we will choose an appropriate time to register with the Department of Homeland Security.

[7/4/23, 8:56:03 PM] TONY: The specific date and time of our coming to Guam is up to you to decide, we will cooperate with you, you just need to tell us one day in advance.

[7/4/23, 8:56:50 PM] TONY: If you can successfully help us reach Guam smoothly, we still have many friends in Saipan who need your help, and they all need to go to Guam to find a job. In this way, you will definitely get a lot of "joy"

5

*in the future!*

15. On or about July 26, 2023, HSI Saipan consensually monitored and electronically recorded an in-person meeting between the HSI UCA and XU in Saipan, NMI. Telephonically using another HSI Special Agent as a Mandarin translator, XU informed the HSI UCA that 12 people (10 male and 2 female) wanted to be transported to Guam by boat and they would be willing to pay $3,000 per person. XU stated that he (XU) was aware that the transportation of people would be illegal. XU offered $6,000 to the HSI UCA as a downpayment to rent the boat and the rest to be paid when the trip is made. XU asserted that each of the passengers would be able to pay the $3,000 for travel to Guam, however, XU opposed having the passengers meet with the HSI UCA before the trip. The HSI UCA requested for XU to provide the names and ages of the passengers to be used as a charter manifest. The HSI UCA provided XU with a blank charter float plan for a fictitious fishing charter business to provide the names of the passengers. The HSI UCA further requested for proof that the other passengers would be able to pay for the trip.

16. On or about August 4, 2023, XU sent two (2) videos via WhatsApp to the HSI UCA. The first video depicted what appears to be a male's torso with similar built and likeness as XU, sitting in a desk chair. The male announces the date (August 4, 2023), in English, while shuffling through US currency in varying denominations. The second video appears to be narrated by a male whose voice is similar in tone to XU. The male announces the date (August 4, 2023), in English, and further states that money shown will be given to "you". Also depicted in the second video is approximately 12-13 individuals holding envelopes containing what appears to be US currency. The second video appears to be recorded in an unidentifiable restaurant. The narrator is believed to be addressing the HSI UCA in the two videos.

17. On or about September 5, 2023, XU sent a photo via WhatsApp to the HSI UCA of a list of passenger names, ages, gender, and vest size. The list contained fourteen (14) handwritten names, including XU's, on the charter float plan provided to XU during the July 26, 2023, in-person meeting the HSI UCA. The following names, ages, and genders were provided by XU to the HSI UCA:

   a. MIAO, Fu Quan, 33, male
   b. ZHANG, Xiang Ke, 50, male
   c. LI, Qin Jiang, 50, male
   d. XU, Zi You, 59, male
   e. CHEN, Qin Jun, 48, male
   f. CHEN, Qin, 40, male
   g. XU, Lu, 39, male
   h. SHANG, Guan Hui Pin, 40, female
   i. WANG, Rui, 53, male
   j. GAO, Xi Pin, 43, female
   k. XU, Dong Lin, 49, male
   l. DIN, Hong Mei, 49, female
   m. LIN, Yu Xin, 51, male
   n. WENG, Bin, 51, male

18. Independent DHS database record checks identified eleven (11) names on the list as Chinese nationals who entered the NMI at various times and all of whom overstayed their legal status in the United States.

19. On or about September 12, 2023, HSI Saipan consensually monitored and

electronically recorded an in-person meeting between the HSI UCA and XU in Saipan, NMI. Beginning at approximately 1703 hours, the HSI UCA and XU began exchanging a series of WhatsApp text messages. The HSI UCA messaged XU to meet at Micro Beach, Saipan, NMI, to which XU acknowledged in the affirmative. XU then messaged the HSI UCA that XU will be passing by two piers on the way to Micro Beach for the HSI UCA to inspect later. At approximately 1732 hours, XU sent a pin location and picture from the Sugar Dock Pier in Susupe, Saipan. At approximately 1746 hours, XU sent a pin location from the Fishing Base Marina in Garapan, Saipan. At approximately 1751 hours, HSI personnel observed XU's ▮▮▮▮, NMI LP# ▮▮▮▮, enter the Micro Beach parking lot and park directly to the right of the HSI UCA vehicle. XU was observed exiting the ▮▮▮ and entering the front passenger side of the HSI UCA vehicle. XU was observed as the sole occupant of the ▮▮▮. Telephonically using another HSI personnel as a Mandarin translator, XU was informed that a vessel will be available to leave the next morning, September 13, 2023, at 0400 hours, under the guise of a fishing charter. XU requested for the vessel to depart before the sun rises. XU asserted that the passengers are ready for travel, including beach clothing. XU inquired if there were security guards at the marina that may stop them. XU stated that when they land in Guam, the passengers want to get out of the area as soon as possible. XU stated that if law enforcement was encountered during the trip, the passengers will not react or speak, and just smile. XU stated that the money will be shown to the HSI UCA before the vessel is launched, but money will not be handed over until the vessel passes Rota, NMI. XU offered to pay $6,000 USD cash to the HSI UCA as down payment for the trip. XU handed the HSI UCA an envelope with $6,000 USD cash in $100 and $50 USD denominations. XU requested for the vessel not to travel on the west side of Saipan due to law enforcement interception.

20.     On or about September 13, 2023, HSI Saipan along with local and federal law enforcement partners conducted an enforcement operation at the Smiling Cove Marina in Saipan, NMI, utilizing an HSI UCA working in undercover capacity as a Guam-resident boat captain. At approximately 0356 hours, HSI personnel and partners observed XU's ▮▮▮▮, followed by two (2) vehicles enter the Smiling Cove Marina area. Fourteen (14) individuals were observed exiting from the three (3) vehicles. Multiple individuals were observed putting on life jackets near the vehicles. Two (2) of the vehicles were observed departing the Smiling Cove area. XU's ▮▮▮▮ remained parked at the Smiling Cove area. XU later stated that his wife was going to pick up the vehicle at a later time. All 14 individuals boarded a vessel that was leased by and under direct HSI control. The HSI UCA then conducted a roll call of each individual listed on the charter float plan previously provided by XU. The HSI UCA requested for each individual to present proof of payment for the trip. Each individual presented a bundle of what appeared to be currency when the HSI UCA called their names. All passengers affirmed that they did not want to be detected by law enforcement officials during the trip. All passengers affirmed that they are willing and ready to go to Guam and refused the HSI UCA's offer to get off the vessel if they do not want to make the trip.

21.     HSI personnel and law enforcement partners subsequently encountered and apprehended the following fourteen (14) individuals:

   a. MIAO, FUQUAN, ▮▮▮▮
   b. ZHANG, XIANGKE, ▮▮▮▮
   c. LI, QINGJIANG, ▮▮▮▮
   d. XU, ZIYOU, ▮▮▮▮
   e. CHEN, QINGJUN, ▮▮▮▮

9

| | | |
|---|---|---|
| 1 | f. | CHEN, QIN, |
| 2 | g. | XU, LU, |
| 3 | h. | SHANGGUAN, HUIPING, |
| 4 | i. | WANG, RUI, |
| 5 | j. | GAO, XIPING, |
| 6 | k. | XU, DONGLIN, |
| 7 | l. | DING, HONGMEI, |
| 8 | m. | LIN, YUXING, |
| 9 | n. | WENG, BIN, |

**D. Conclusion**

Based on the foregoing, I respectfully submit that there is probable cause to believe that Donglin XU violated Title 8 USC §§ 1324 (a)(1)(A)(ii) and (v)(I) by engaging in a conspiracy to transporting, moving, or attempting to transport or move, an alien within the United States, knowing or in reckless disregard of the fact that the alien came to, entered, and remained in the United States in violation of law.

FURTHER AFFIANT SAYETH NAUGHT

_____
MeiLani L. Quintanilla
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN TO before me on this 14th day of September, 2023.

_____
RAMONA V. MANGLONA
Chief Judge
District of the Northern Mariana Islands